1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD DEGNER,

11              Plaintiff,              No. CIV S-10-1673 JAM EFB P

12       vs.

13   ATHANASSIOUS,

14              Defendant.            <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16       Plaintiff is a state prisoner proceeding without counsel and in forma pauperis in an action

17   brought under 42 U.S.C. § 1983.  This proceeding was referred to this court by Local Rule 302

18   pursuant to 28 U.S.C. § 636(b)(1).  This action proceeds on plaintiff's Eighth Amendment

19   deliberate indifference claim against defendant Athanassious.  Plaintiff alleges that defendant

20   performed an unsuccessful surgery on his right ear causing him excruciating pain and thereafter,

21   defendant failed to refer plaintiff to an outside hospital for a second opinion or surgery.

22   Defendant moves for summary judgment on the ground there is no evidence to support plaintiff's

23   claim of deliberate indifference, and alternatively, on the ground he is entitled to qualified

24   immunity.  As discussed below, the undersigned finds there is no evidence to support plaintiff's

25   claim, and therefore recommends that defendant's motion be granted.

26   ////

1

**I.      Background**

Unless otherwise noted, the court finds that the following facts are not disputed by the parties or following the court's review of the evidence submitted, have been determined to be undisputed.

Plaintiff is a prisoner properly in the custody of the California Department of Corrections and Rehabilitation (CDCR) at California Medical Facility (CMF) in Vacaville, California. Def.'s Mot. for Summ. J., Stmt. of Undisp. Facts in Supp. Thereof ("SUF") 1.  Plaintiff is not a doctor.  SUF 2.

Defendant is a licensed physician and surgeon in the State of California and at all times relevant to this lawsuit, was the elected Chairman of Surgery at CMF.  SUF 3.  Defendant has practiced surgery for over 43 years.  SUF 4.

On September 16, 2009, defendant performed an excision biopsy of a skin lesion on plaintiff's right ear pinna to rule out basal cell carcinoma (BCC).  SUF 5.  The excision of a skin lesion is the appropriate medical treatment to fully remove skin cancers such as BCC because if the cancer is not cut out, it may spread to the surrounding skin and to other parts of the body (metastasize).  SUF 6.  Another reason that skin lesions are excised is for cosmetic appearance. SUF 7.  The most common type of excision is an elliptical excision.  SUF 8.  The ellipse is designed so that the resulting scar runs parallel with existing skin creases to ensure that the scar is as narrow and short as possible.  SUF 9.  It is impossible to cut the skin without scarring in some way, so the patient will always have some sort of scar.  SUF 10.

On July 20, 2009, a physician request for services was submitted on behalf of plaintiff for a routine, initial, outpatient consultation with defendant at the CMF Surgery Clinic.  SUF 11. The doctor's principle diagnosis was possible BCC and the doctor indicated that the consultation was medically necessary because plaintiff had a suspicious lesion on his right upper ear pinna for six months with pearly white edges, central scabbing and a diameter of approximately two to three millimeters.  SUF 12.

On August 13, 2009, plaintiff consulted with defendant at the CMF Surgery Clinic. SUF 13. Defendant diagnosed plaintiff with a lesion of his right ear pinna and his plan was to perform an excision biopsy to rule out BCC. SUF 14. Defendant submitted a physician request for services on plaintiff's behalf for an urgent excision biopsy. SUF 15.

Plaintiff signed an Informed Consent form on August 31, 2009 consenting to the excision biopsy after being informed that "[a]ll operations and procedures may involve risks of unsuccessful results, complications, injury, or even death, from both known and unforeseen causes, and no warranty or guarantee is made as to result or cure." SUF 16. Plaintiff was also informed about the possible risks and complications on September 11, 2009, but elected to proceed with the surgery despite an understanding of the possible "risks, benefits, alternatives, and complications, with an emphasis on bleeding, infection, recurrence, and anesthesia complications, as well as the fact that the lesion should be excised with a margin of 0.5 cm circumferentially and more if needed, that may result in delay of healing and disfigurement of the ear." SUF 17.

On September 16, 2009, the excision biopsy of the lesion on plaintiff's right ear pinna took 21 minutes, during which defendant made an elliptical incision with 0.5 centimeter margins all around the lesion and excised the entire lesion and surrounding tissue. SUF 18. The skin was undermined and separated from the cartilage of the ear pinna, and then sutured. SUF 19. Plaintiff tolerated the procedure very well and was transferred to the recovery room in good condition. SUF 20. Defendant submitted the ellipse of skin of the ear pinna with lesion to the lab. SUF 21. Defendant wrote an order for plaintiff's stitches to be removed in two weeks, to have daily dressing changes at the B1 Clinic for two weeks, and to follow-up in the Surgery Clinic in two weeks. SUF 22. Defendant also prescribed Keflex (an antibiotic to prevent infection) for two weeks and Tylenol #3 (pain medication as needed for pain) for two weeks for plaintiff. SUF 23.

////

The pathology results of plaintiff's skin lesion were consistent with chondrodermatitis nodularis helicis (chondrodermatitis) and no evidence of malignancy was identified.  SUF 24. The results demonstrated that the lesion was 0.35 centimeters from the nearest margin, meaning that there was .35 centimeters of normal tissue between the edge of the lesion and the outer edge of the removed tissue.  SUF 25.  The pathology report confirmed that defendant completely removed the entire lesion.  SUF 26.

On September 22, 2009, Dr. Mehta renewed the prescription of Tylenol #3 for 30 days for plaintiff.  SUF 27.

On October 2, 2009, defendant saw plaintiff for a follow-up appointment and noted that the pathology report showed chondrodermatitis and no cancer, and defendant also noted that plaintiff's wound was okay.  SUF 28.  Defendant prescribed Ciprofloxacin (an antibiotic to prevent infection) and also wrote an order for plaintiff's stitches to be removed at the B1 Clinic in one week and to return to the clinic in 30 days.  SUF 29.

On October 8, 2009, defendant saw plaintiff for a follow-up appointment and noted that plaintiff's wound was okay, he still had complaints of pain, and that he had right ear chondrodermatitis.  SUF 30.  Defendant wrote an order for plaintiff to go to the B1 Clinic to have his stitches removed and to return to his primary care physician.  SUF 31.  Plaintiff testified that he did not disagree with anything that defendant did during this follow-up appointment, defendant did not deny him any treatment, and that he was already taking Tylenol #3 for pain. SUF 32.  Plaintiff went to the B1 clinic that day, October 8, 2009, and his stitches were removed. SUF 33.  The nurse who removed plaintiff's stitches did not say that the lesion was still there and plaintiff testified that if the lesion was still there, he believes the nurse would have commented on it.  SUF 34.

On October 19, 2009, Dr. Mehta renewed the prescription of Tylenol #3 for 30 days for plaintiff.  SUF 35.

////

On October 30, 2009, defendant saw plaintiff for a follow-up appointment and noted that plaintiff's right ear was okay and there was no cancer.  SUF 36.  Defendant noted that plaintiff had chondrodermatitis and complained of pain.  SUF 37.  During the examination, defendant noted that plaintiff's wound had healed well, that his ear looked normal, and that the results of the surgery were good.  SUF 38.  Defendant wrote an order for plaintiff to return to his primary care physician.  SUF 39.

After October 30, 2009, defendant never treated plaintiff again, nor did plaintiff have another appointment with defendant, because he was plaintiff's surgeon, not his primary care physician.  SUF 40.  Once plaintiff's wound had healed well and the results of the surgery were good, it was not necessary for defendant to treat plaintiff anymore.  SUF 41.

On November 13, December 4 and December 29, 2009, Dr. Mehta renewed the prescription of Tylenol #3 each time for 30 days for plaintiff.  SUF 42.

On March 2, 2010, plaintiff was seen in the clinic requesting a lower bunk chrono, where it was noted that objectively, there was no skin lesion on plaintiff's right ear but only a positive healing scar.  SUF 43.

According to plaintiff, defendant performed an unsuccessful surgery because it is his belief that defendant did not excise the entire lesion.  SUF 44.  However, the medical records, including the operation note, pathology report, and the medical record dated March 2, 2010, confirm that defendant completely removed the entire lesion and that the surgery was successful.  SUF 45.

According to plaintiff, he was in excruciating pain as a result of the surgery.  SUF 46.  The medical records and evidence demonstrate, however, that from the date of plaintiff's surgery through at least January 28, 2010, Tylenol #3 was continuously prescribed for plaintiff.  SUF 47.

According to plaintiff, he claims that defendant should have sent him to an outside hospital for a second surgery or consultation.  SUF 48.  Not only did defendant completely excise the lesion, making a second surgery or consultation at an outside hospital medically

unnecessary, defendant even noted in his last follow-up with plaintiff that his wound had healed well, his ear looked normal, and the results of the surgery were good.  SUF 49.  Defendant did not submit a physician's request for services on plaintiff's behalf to go to an outside hospital because it was not medically indicated.  SUF 50.  Any referral to an outside hospital would have required the approval of the Chief Medical Officer.  SUF 51.  Although plaintiff was not sent to an outside hospital by defendant because there was no need, plaintiff still had the right to see an outside consultant if his request would have been authorized and if he would have paid for all associated costs.  SUF 52.

At no time did defendant ever intentionally or knowingly cause plaintiff to experience any pain, suffering, or injury.  SUF 53.  At no time did defendant refuse to provide plaintiff with necessary care or treatment.  SUF 54.  Defendant's treatment of plaintiff met the community and national standards of medical care.  SUF 56.

## II.    Summary Judgment Standards

 Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on

1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the
initial responsibility of presenting the basis for its motion and identifying those portions of the
record, together with affidavits, if any, that it believes demonstrate the absence of a genuine
issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th
Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the
burden then shifts to the opposing party to present specific facts that show there is a genuine
issue for trial.  Fed. R. Civ. P. 56(e); *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67
F.3d 816, 819 (9th Cir. 1995).

       A clear focus on where the burden of proof lies as to the factual issue in question is
crucial to summary judgment procedures.  Depending on which party bears that burden, the party
seeking summary judgment does not necessarily need to submit any evidence of its own.  When
the opposing party would have the burden of proof on a dispositive issue at trial, the moving
party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National
Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters
which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-
24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,
depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment
should be entered, after adequate time for discovery and upon motion, against a party who fails
to make a showing sufficient to establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a
circumstance, summary judgment must be granted, "so long as whatever is before the district
court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is
satisfied."  *Id.* at 323.

       To defeat summary judgment the opposing party must establish a genuine dispute as to a
material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law, *id.*, which here involves an Eighth Amendment claim that the defendants failed to treat or remove plaintiff's enlarged and/or cancerous prostate. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts

8

1  at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

2  (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational

3  trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

4  475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

5       Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

6  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

7  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8  'genuine issue for trial.'"  *Id.*  If the evidence presented and any reasonable inferences that might

9  be drawn from it could not support a judgment in favor of the opposing party, there is no genuine

10 issue.  *Celotex.*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine

11 dispute over an issue that is determinative of the outcome of the case.

12      On November 10, 2010, the undersigned advised plaintiff of the requirements for

13 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v.*

14 *Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and

15 *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

16 **III.    Legal Standard for Eighth Amendment Claim Pursuant to 42 U.S.C. § 1983**

17      Under 42 U.S.C. § 1983, plaintiff must show: (1) the violation of a federal constitutional

18 or statutory right; and (2) that the violation was committed by a person acting under the color of

19 state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Jones v. Williams*, 297 F.3d 930, 934 (9th

20 Cir. 2002).  An individual defendant is not liable on a civil rights claim unless the facts establish

21 the defendant's personal involvement in the alleged rights deprivation, as there is no respondeat

22 superior liability under section 1983.  *Jones*, 297 F.3d at 934.  That is, plaintiff may not sue any

23 official on the theory that the official is liable for the unconstitutional conduct of his or her

24 subordinates.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009).  Because respondeat superior

25 liability is inapplicable to § 1983 suits, "a plaintiff must plead that each Government-official

26 defendant, through the official's own individual actions, has violated the Constitution."  *Id.*  To

9

1   be held liable, "the supervisor need not be directly and personally involved in the same way as

2   are the individual officers who are on the scene inflicting constitutional injury." *Starr v. Baca*,

3   __ F.3d __, 2011 U.S. App. LEXIS 15283, at *6 (9th Cir. 2011) (quotations omitted).  Rather,

4   the supervisor's participation and resulting liability could be based upon the supervisor's

5   knowledge of and acquiescence in unconstitutional conduct by others.  *Id.*

6        To state a section 1983 claim for violation of the Eighth Amendment based on inadequate

7   medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate

8   indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To prevail,

9   plaintiff must show both that his medical needs were objectively serious, and that defendant

10  possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991);

11  *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).  A serious medical need is one that

12  significantly affects an individual's daily activities, an injury or condition a reasonable doctor or

13  patient would find worthy of comment or treatment, or the existence of chronic and substantial

14  pain.  *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

15  *grounds by WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).

16       Deliberate indifference may be shown by the denial, delay or intentional interference

17  with medical treatment or by the way in which medical care is provided. *Hutchinson v. United*

18  *States*, 838 F.2d 390, 394 (9th Cir. 1988).  To act with deliberate indifference, a prison official

19  must both be aware of facts from which the inference could be drawn that a substantial risk of

20  serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837

21  (1994).  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious

22  harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.  "[I]t

23  is enough that the official acted or failed to act despite his knowledge of a substantial risk of

24  serious harm." *Id.* at 842.  A physician need not fail to treat an inmate altogether in order to

25  violate that inmate's Eighth Amendment rights. *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314

26  (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some

1   treatment is prescribed, may constitute deliberate indifference in a particular case.  *Id.*  However,

2   it is important to differentiate common law negligence claims of malpractice from claims

3   predicated on violations of the Eight Amendment's prohibition of cruel and unusual punishment.

4   In asserting the latter, "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not

5   support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.

6   1980) (citing *Estelle*, 429 U.S. at 105-06); *see also Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

7   Cir. 2004).   It is well established that mere differences of opinion concerning the appropriate

8   treatment cannot be the basis of an Eighth Amendment violation.  *Jackson v. McIntosh*, 90 F.3d

9   330, 332 (9th Cir. 1996); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

10   **IV.   Discussion**

11          Defendant contends plaintiff has no evidence to support his Eighth Amendment claim.

12   As set forth above, defendant also submits evidence showing that, contrary to the allegation of

13   deliberate indifference, the defendant completely removed plaintiff's lesion and never denied

14   plaintiff pain medication.  Rather, that evidence shows plaintiff was continuously prescribed

15   Tylenol #3, and that a referral for an outside consultation or surgery was not medically indicated.

16   As discussed below, the undersigned finds there simply is no evidence to establish a genuine

17   issue of fact as to whether defendant acted with the requisite deliberate indifference for an

18   Eighth Amendment claim.

19          In his opposition brief, plaintiff contends he complained that the lesion had not been

20   removed during surgery and that the Tylenol was not adequately relieving his pain.  *See* Dckt.

21   No. 26.  However, plaintiff submits no evidence to dispute defendant's evidence, including the

22   pathology report, which shows that defendant completely removed the lesion from plaintiff's ear.

23   *See* SUF 26, 45.  Construing the evidence submitted in the light most favorable to plaintiff,

24   plaintiff has established, at best, his disagreement with the pathology report and a difference of

25   opinion between himself and defendant as to what type and what amount of pain medication

26   plaintiff should have received.  It is well established that mere differences of opinion concerning

1  the appropriate treatment cannot be the basis of an Eighth Amendment violation. *Jackson*, 90

2  F.3d at 332; *Franklin*, 662 F.2d at 1344.  Plaintiff's opinion as to what constituted adequate

3  medical care does not create a triable issue to defeat summary judgment.  *See Estelle*, 429 U.S. at

4  106.  Defendant is therefore entitled to summary judgment.[1]

5  **V.    Recommendation**

6          Accordingly, IT IS RECOMMENDED that:

7          1.  Defendant's August 30, 2011 motion for summary judgment be granted;

8          2.  The Clerk be directed to enter judgment in defendant's favor; and

9          3.  The Clerk be directed to close this case.

10         These findings and recommendations are submitted to the United States District Judge

11  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

12  after being served with these findings and recommendations, any party may file written objections

13  with the court and serve a copy on all parties.  Such a document should be captioned "Objections

14  to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

15  specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

16  F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

17  DATED:  February 23, 2012.

19  EDMUND F. BRENNAN
    UNITED STATES MAGISTRATE JUDGE

---

25  [1]Defendant also argues summary judgment should be granted because he is entitled to
    qualified immunity.  Dckt. No. 25.  Because the undersigned finds summary judgment
    appropriate on the ground that plaintiff failed to provide evidence to support his Eighth
26  Amendment claim, the court declines to address this argument.